IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Russel W. Rice, ) | |
| ) | Civil Action No. 6:16-302-MGL-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Joseph McFadden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at Lieber Correctional Institution in the South Carolina Department of Corrections (doc. 1 at 1). The petitioner was indicted by the Greenville Grand Jury in May 2003 for murder (2003-GS-23-3615), trafficking in cocaine (2003-GS-23-3612), unlawful carrying of a pistol (2003-GS-23-3614), and, at the December 2003 term of general sessions, for possession of weapon during the commission of a violent crime (2003-GS-23-8779)(doc. 21-4). He was represented by Steven Sumner. A jury trial was held April 12–15, 2004, before the Honorable C. Victor Pyle, Jr (app. 1–591[1]). The petitioner was convicted of all charges (app. 585). Judge Pyle sentenced him to life in prison for murder, 25 years for trafficking in cocaine, five years for possession of a weapon during the commission of a violent crime, and one year for unlawful carrying of a pistol (app. 589–90).

---

[1] The Appendix can be found at Docket Entry Numbers 21-1 through 21-3.

*Underlying Case Facts from Trial Testimony*

In September or October of 2002, Johnny Hamby and the petitioner had dinner at a Ryan's in Greenville, South Carolina (app. 234). Upon leaving the restaurant, the petitioner discovered his 1994 Mercury Topaz had been stolen from the parking lot (app. 235). Homer Johnson had left Ryan's earlier in the evening, his wife had driven him back to the restaurant, and he had stolen the petitioner's car (app. 190–91). Johnson stole cocaine, money, and a gun from the trunk of the petitioner's car. Johnson then left the car, deserted, on the side of the highway (app. 190, 213, 236).

On November 4, 2002, Johnson came into possession of 20 pounds of marijuana (app. 201–03). Hamby, the petitioner, and Johnson "cut up" the marijuana into individual pound bags (app. 238). The petitioner became angry about only receiving ten pounds. Johnson also told the petitioner he owed him $11,000 (app. 239–40). The petitioner and Johnson agreed to meet the following day to complete that part of the deal (app. 240). The petitioner left Johnson's house with half of the marijuana, while Johnson kept the other half (*id.*).

The next day, the petitioner called Hamby and asked him to tell Johnson to meet him at a Super 8 Motel (app. 242). At 5:28 p.m., Johnson called Hamby stating he had arrived at the motel and was going to the office to see if the petitioner had checked in (app. 243, 276). After the final call between Johnson and Hamby, Johnson was found dead in the motel parking lot by motel resident (app. 92–93, 110–13). He had been shot twice with a rifle, once in the right side of his back and once in the left side of his chest (app. 119, 125).

During the course of their investigation, law enforcement officers attempted to contact the petitioner (app. 277). Officer Daniel Fuller asked friends and family to have the petitioner contact him, called the petitioner's mobile phone several times, and left messages when he could (app. 277). On November 15, 2002, the petitioner left a voice

mail message with Fuller (app. 276–77). On December 26, 2002, the petitioner answered Fuller's call and indicated he would be willing to talk to him about the case; however, the petitioner said he was out of town and would not be back until December 30, 2002 (app. 278–79). The petitioner's car was spotted on December 28, 2002, at a Greenville hotel (app. 278–79). Fuller watched as the petitioner checked out of the hotel and began to leave the premises (app. 280). Fuller and another officer stopped the car (app. 287). The petitioner exited the car, and, after a pat down, a pistol and approximately $2,500 were removed from his pocket (app. 291–94). The petitioner was arrested (app. 294).

Before the petitioner's car was removed from the scene, an inventory search was conducted (app. 294). A search of the trunk revealed, among other items: a Remington 30.06 rifle cut into pieces in a plastic bag, .44 caliber bullets, 239.84 grams of cocaine, and a scale (app.50, 64, 295–96, 326, 393).

## *Direct Appeal*

Appellate Defender Robert M. Dudek of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. On December 5, 2005, appellate counsel filed a final brief of appellant in the South Carolina Court of Appeals and raised the following issue:

> Whether the court erred by refusing to sever the murder charge from the trafficking in cocaine charge since there was not any legitimate or close nexus between the large amount of cocaine discovered in appellant's trunk during a traffic stop almost seven weeks after the murder, and the murder itself, and the undue prejudice of evidence of trafficking in cocaine warranted a severance?

(Doc. 21-5 at 1).

The State filed its final brief on November 16, 2005 (doc. 21-6).[2] The South Carolina Court of Appeals issued an opinion affirming the convictions on April 24, 2006 (app. 592–96). The petitioner filed a petition for rehearing on June 15, 2006 (doc. 21-7). The State made its return to the petition on June 26, 2006 (doc. 21-8). On August 25, 2006, the South Carolina Court of Appeals denied the petition (doc. 21-9).

Appellate counsel then filed a petition for writ of certiorari in the Supreme Court of South Carolina on November 27, 2006, raising the following question:

> Whether the Court of Appeals erred by ruling the trial judge did not abuse his discretion by refusing to sever the murder charge from the trafficking in cocaine charge since there was not any legitimate or close nexus between the large amount of cocaine discovered in petitioner's trunk during a traffic stop almost seven weeks after the murder, and the murder itself, and the undue prejudice of evidence of trafficking in cocaine warranted a severance?

(Doc. 21-10 at 3). The State made its return to the petition on January 26, 2007 (doc. 21-11). The Supreme Court of South Carolina denied the petition on October 18, 2007 (doc. 21-12). The South Carolina Court of Appeals issued the remittitur on October 23, 2007 (doc. 21-13).

*PCR*

On May 28, 2008 the petitioner filed an application for post-conviction relief ("PCR") in the Court of Common Pleas for Greenville County and raised the following questions:

> (a) Was counsel ineffective for failing to introduce John Hamby's three inconsistent statements into evidence and in failing to do so denied the fact finders all the facts of the case?

---

[2] The respondent noted in his motion for summary judgment that the statement of the case in the State's brief appears to describe an unrelated appeal from another circuit (doc. 21 at 3 n. 1)

> (b) Was counsel ineffective for failing to object when the trial court impermissibly commented upon the facts of Petitioner's case during his charge to the jury?
>
> (c) Was counsel ineffective for failing to object to the trial court's charge that used confusing language and impermissibly directed a verdict for the State?
>
> (d) Was counsel ineffective for failing to object to the trial court's Allen charge that was coercive and erroneous, thus rendering the trial court's charge unconstitutional?

(App. 597–628).

On August 27, 2008, the State made its return in the action (app. 635–38). The petitioner filed an amended application on December 4, 2008, which included, in relevant part, issues challenging trial counsel's investigation of the case (app. 630–34).

By order dated October 20, 2009, the Honorable Alexander Macaulay granted the petitioner's request for discovery and allowed a firearm expert, Kelly Fite, to examine the firearm from the petitioner's trial (app. 640–41). An evidentiary hearing was held on November 15, 2010, before the Honorable Robin B. Stilwell (app. 642–67). At the conclusion of the hearing Judge Stilwell took the matter under advisement pending the receipt of Fite's deposition (app. 666). By order dated February 10, 2011, and filed February 18, 2011, the PCR court denied and dismissed the petitioner's PCR action in its entirety (app. 690–97).

## *PCR Appeal*

Appellate Defender Elizabeth A. Franklin-Best of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, initially represented the petitioner on appeal. Franklin-Best filed a petition for writ of certiorari in the Supreme Court of South Carolina on August 23, 2011, and raised the following issue:

> Whether Rice received ineffective assistance of counsel when his trial counsel failed conduct an independent investigation into the purported ability of the State's witness to connect the alleged murder weapon with the disassembled gun located in the back of Rice's truck, which constituted the only physical evidence tending to connect Rice to the victim's murder, and

5

> when an independent expert would have testified that the state's expert's method of making that determination was flawed?

(Doc. 21-14 at 2).

The State made its return to the petition on October 28, 2011 (doc. 21-15). The case was thereafter transferred to the South Carolina Court of Appeals. On October 23, 2013, the Court of Appeals granted the petition for review and ordered additional briefing (doc. 21-16).

Appellate Defender Robert M. Pachak assumed representation of the petitioner and filed a brief of petitioner on November 20, 2013, raising the same issue presented in the petition for writ of certiorari (doc. 21-17). The State filed its brief on November 27, 2013 (doc. 21-18). The Court of Appeals issued an unpublished opinion on October 15, 2014, affirming the ruling below (doc. 21-19). Appellate counsel filed a petition for rehearing on October 30, 2014 (doc. 21-20). The Court of Appeals denied the petition on November 21, 2014 (doc. 21-21). On December 9, 2014, appellate counsel filed a petition for certiorari review of the Court of Appeals decision, asserting the following as the sole issue presented:

> Whether the Court of Appeals was correct on holding trial counsel was not ineffective in ailing to conduct an independent investigation of the alleged murder weapon found in the trunk of petitioner's vehicle?

(Doc. 21-22 at 4). The State filed its return on December 30, 2014 (doc. 21-23). By order dated March 19, 2015, the Supreme Court of South Carolina granted the petition and ordered additional briefing (doc. 21-24). The petitioner filed his brief on April 14, 2015 (doc. 21-25). The State filed its brief on May 4, 2015 (doc. 21-26). The Supreme Court of South Carolina subsequently dismissed the petition for writ of certiorari as being improvidently granted on December 2, 2015 (doc. 21-27). The remittitur was sent to the Greenville County Clerk of Court on December 2, 2015, and was filed December 7, 2015 (doc. 21-28).

**FEDERAL PETITION**

On January 29, 2016, the petitioner filed his Section 2254 petition (doc. 1). On June 17, 2016, the respondent filed a motion for summary judgment (doc. 22) and a return and memorandum (doc. 21). By order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 23). The petitioner was granted one extension of time to file his response through September 14, 2016 (doc. 31). On September 15, 2016, the petitioner filed his response in opposition to the motion for summary judgment (doc. 33). The respondent filed a reply on September 26, 2016 (doc. 36).

In his federal habeas corpus petition, the petitioner makes the following claims:

> **Ground One:** The court erred by refusing to sever the trafficking in cocaine charge from the murder charge in this case. There was no rational or legimate [sic] nexus between the two charges. The cocaine was discovered during a traffic stop about seven weeks after the murder the trafficking in cocaine charge and evidence did not add anything of legimate [sic] substance to the fact the allege murder weapon was also found in the trunk during his belated traffic stop. The undue prejudice of the trafficking in cocaine charge denied appellant a fair trial
>
> **Ground Two**: Was Counsel Ineffective for failing to introduce John Hamby Three inconsistent statements into Evidence and in Failing to do so denied the facts Finders all the facts of the case?
>
> **Ground Three**: Was Counsel Ineffective for failing to object when the trial court impermissibly Commented upon the fact of petitioner's case during his Charge to the Jury?
>
> **Ground Four**: Was Counsel Ineffective for Failing to object to the trial court's charge that used Confusing language and impermissibly directed a verdict for the State?

>**Ground Five**: Was Counsel Ineffective for failing to object to the Court's Allen charge that was coercive and erroneous, thus redendering [sic] the trial Court's Charge unconstitutional?
>
>**Ground Six**: Whether the Court of Appeals was Correct in holding trail [sic] Counsel was not ineffective in failing to conduct an independent investigation of the alleged murder [sic] found in trunk of petition's vechile [sic]?

(Doc. 1-1).

## **APPLICABLE LAW AND ANALYSIS**

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Exhaustion*

The respondent acknowledged that the petitioner exhausted his state court remedies and that the petition is timely (doc. 21 at 8–9, 12 n. 5).

### *Non-Cognizable Claim*

In Ground One, the petitioner alleges that the trial judge erred by failing to sever the trafficking cocaine charge from the murder trial (docs. 1 at 2; 1-1 at 1–6).  This issue was raised and addressed in the direct appeal and found to be without merit as a matter of state law (*see* app. 594–95).  That ruling is not subject to federal habeas review because the question of severance is governed by state law.

"[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," *Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) (emphasis in original), and "it is not the province of a federal habeas corpus court to reexamine statecourt determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[A] federal court may not issue the writ on the basis of a perceived error of state law.").

"Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998) (internal citations omitted); *see also Zeigler v. Bush*, 2015 WL 3775901, * 8 (D.S.C. 2015) (collecting cases that severance is a state law issue not independently cognizable in federal habeas); *Penza v. Warden*, C/A No. 2:07-0518-JFA-RSC, 2008 WL 474236, at *1, *14 (D.S.C. Feb. 20, 2008) (adopting and incorporating report and recommendation finding "[g]enerally, severance is a question of state law not cognizable in federal habeas proceedings").

The petitioner's response in opposition does not challenge the respondent's argument that this ground fails to state a cognizable federal habeas claim[3] (*see* doc. 33). The petitioner has made no showing of prejudice caused by the joint trial in this case; accordingly, summary judgment is appropriate with respect to this claim.

*Procedural Default*

The respondent argues that Grounds Two, Three, Four, and Five are procedurally barred (doc. 21 at 1, 14–15). The court agrees.

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have

---

[3]In his response in opposition to the motion for summary judgment, the petitioner states that the claims in his petition "all stem from the denial of his Sixth Amendment right to effective assistance of counsel" (doc. 33 at 2). The undersigned declines to construe Ground One as raising a claim for ineffective assistance of counsel. The petitioner was able to clearly allege that the remainder of his grounds concerned ineffective assistance of counsel claims and he stated in his petition that trial counsel had moved to sever the charges before the start of trial (doc. 1-1 at 5). *See Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 F.App'x 278, 290–91 (4th Cir. 2013) ("The liberal construction which [courts] are obliged to afford to a pro se complaint is not without bounds . . . . [T]he principal of liberal construction does not require [district judges] to conjure up questions never presented to them.'" (internal quotation marks and citation omitted) (alterations in original)). To the extent that the petitioner intends to raise a new claim of ineffective assistance of counsel, that argument was not raised in the petition and will not be considered by this court. *See Temple v. Oconee Cty.*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014) (new matters cannot be raised in a response in opposition to a motion for summary judgment (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992))).

applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The failure to file a Rule 59 motion to have the issues addressed will preclude appellate review in the state appellate courts. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review, and the Court of Appeals erred in addressing the merits of the issues . . . .").  The failure to raise the issue correctly under this procedure not only bars appellate review, but also habeas review.  *Greene v. Cartledge*, No.

11

4:15-cv-0774-JMC-TER, 2016 WL 1055585, at *12 (D.S.C. Jan. 20, 2016), *report and recommendation adopted*, 2016 WL 1045744 (D.S.C. Mar. 16, 2016) ("these claims are procedurally barred from review in federal habeas"). Further, there is no indication of a substantial claim or showing of ineffective assistance of PCR counsel in regard to the claim to be shown that could to excuse the default under the *Martinez* exception. *See Martinez v. Ryan*, 566 U.S. 1, 11 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

Here, Ground Two was raised to and ruled upon by the PCR court (app. 606, 696). However, this ground was not raised in the petition for writ of certiorari, the brief following the grant of a writ of certiorari, the petition for rehearing following the affirmation of the PCR court's order of dismissal, the petition for writ of certiorari to the Court of Appeals, or the brief following the grant of a writ of certiorari (docs. 21-14, 21-17, 21-20, 21-22, 21-25). Grounds Three, Four, and Five were raised in the petitioner's PCR application (app 611–26). However, the PCR court failed to rule on these grounds with any specificity[4] (*see* app.690–97). The petitioner failed to file a motion a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Moreover, the petitioner failed to raise these grounds in the petition for writ of certiorari, the brief following the grant of a writ of certiorari, the petition for rehearing following the affirmation of the PCR court's order of dismissal, the petition for writ of certiorari to the Court of Appeals, or the brief following the grant of a writ of certiorari (docs. 21-14, 21-17, 21-20, 21-22, 21-25). Therefore, Grounds Two, Three, Four, and Five are procedurally barred from federal habeas review unless the petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the

---

[4]The undersigned is aware that the PCR court acknowledged that these grounds had been raised in the PCR application and included a section in its order of dismissal finding that all other allegations raised in the application or at the PCR hearing and not specifically ruled on by the order of dismissal were denied and dismissed (app. 691, 696–97).

alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred. *See Coleman*, 501 U.S. at 750 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise not, then it is procedurally barred from federal habeas review); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Matthews v. Evatt*, 105 F.3d 907, 915 (4th Cir. 1997).

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 566 U.S. at 7 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). In this case, the petitioner has failed to argue cause for the default of Grounds Two, Three, Four, and Five (*see* doc. 33). The petitioner also failed to argue a fundamental miscarriage of justice has occurred—i.e., that he is actually innocent (*see id.*). Therefore, Grounds Two, Three, Four, and Five are barred from federal habeas review.

## *Merits of Remaining Claim*

In Ground Six, the petitioner alleges that trial counsel was ineffective in failing to conduct an independent investigation of the murder weapon (doc. 1-1 at 19).[5] To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of

---

[5] In Ground Six, the petitioner argues that the South Carolina Court of Appeals erred in failing to find that trial counsel was ineffective (doc. 1-1 at 19). The undersigned has construed this ground as raising an ineffective assistance of counsel claim; even if the petitioner had intended to allege an error in the PCR process, this allegation would not be cognizable because alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions. *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (citing *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)). *See also Lambert v. Blackwell*, 387 F.3d 210, 247 (3rd Cir. 2004) ("the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas relief. We look only to the trial and direct appeal.").

reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011)(internal citations omitted).

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 693–94). The PCR court found:

> The Applicant failed to meet his burden of proving trial counsel should have hired an expert to examine the rifle pieces. Trial counsel testified that, while he and the Applicant had a brief discussion about obtaining an expert witness, it was not something he seriously considered. Trial counsel testified he decided instead to attack the methodology of the State's witness and raise the issue of reasonable doubt. This Court

> finds that, as the rifle had been cut into several pieces, this was a valid trial tactic. Further, this Court finds Mr. Fite's testimony unpersuasive, as he neither examined the evidence in question nor contacted the State's expert witness to discuss the methodology of the original test.

(App. 695–96). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Moreover, the record supports the PCR court's determination. At the PCR hearing, the petitioner testified that there was no direct evidence tying him to the murder and the State brought in an expert witness who testified that, in his opinion, the gun found in the petitioner's trunk was the murder weapon (app. 649–50). The petitioner affirmed that Kelly Fite had been hired by the petitioner's family for the PCR and had provided a statement after reviewing the records concerning testing on the gun (app. 650–51, 672). The petitioner stated that he did not recall talking about retaining an expert witness with trial counsel; however, after reading Fite's report, he believed that he was prejudiced by trial counsel's failure to hire an expert (app. 651, 654).

Fite was deposed and a copy of the transcript was sent to the PCR court (app. 665, 672–79). He testified that he had been a firearms examiner for the Georgia Investigation Crime Laboratory for 31 years, retired in 1999, and had been qualified as an expert in numerous court cases (app. 673). He stated that he had reviewed the "crime labs report put out by the Greenville laboratory" and the State expert's trial testimony (app. 674). He stated that "[he] did not believe in the type of test that was done on this evidence and the condition of the evidence that it was in when it was tested that you can make a comparison and come out with a positive answer" (app. 674–75). He testified that, based

on his experience with the type of testing the State's expert performed on the gun, he believed it was "unlikely that you could get a positive identification" (app. 677). Fite further testified that he had not spoken to the State's expert and that he had not had the opportunity to review the physical evidence in person (app. 678).

At the PCR hearing, trial counsel testified that he had read Fite's report (app. 657). Trial counsel stated that his defense strategy centered around the fact that there was no direct proof that the petitioner shot the victim "[a]nd cross-examining of the State's witnesses and creating or establishing a reasonable doubt as to really [the] level of proof regarding the murder charge" (app. 661). He stated that he was aware the State was going to present an expert witness and that he had read the expert's report (app. 662). Trial counsel stated that he had not seriously considered hiring his own expert because he "just didn't see it as anything that we really needed to do" (app. 663). He testified that he thoroughly cross-examined the State's expert regarding the methodology he used to form his opinion that the gun found in the truck of the petitioner's car was the murder weapon and that he believed there had not been any fingerprints on the gun; trial counsel stated that he felt he had established reasonable doubt through his cross-examination of the expert (app. 663, 664).

As an initial matter, the PCR court found the petitioner's testimony was not credible and found trial counsel's testimony was credible (app. 695). This finding is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."(citing 28 U.S.C. § 2254(e)(1))); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (holding that the petitioner

may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003))).

Moreover, trial counsel was able to articulate a valid trial strategy for declining to introduce his own expert at trial. *See Strickland*, 466 U.S. at 689 ("[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (internal citation omitted)). While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. *Id.* Decisions about what types of evidence to introduce "are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce." *Pruett v. Thompson,* 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993) (citation omitted); *see also Bunch v. Thompson,* 949 F.2d 1354, 1364 (4th Cir. 1991). Thus, the petitioner has failed to establish that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and, accordingly, summary judgment is appropriate with respect to this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the court recommends that respondent's motion for summary judgment (doc. 22) be GRANTED and the petition be DENIED.

s/ Kevin F. McDonald<br>United States Magistrate Judge

January 27, 2017
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **300 East Washington Street — Room 239**
> **Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).